1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

PENNY PANNEK,

                    Plaintiff,

          v.

CITY OF SEATTLE, and LINCOLN
TOWING ENTERPRISES, INC.,

                    Defendants.

NO.

COMPLAINT AND JURY DEMAND

The Plaintiff, Penny Pannek, by and through her attorneys of record, alleges as follows:

## I.      INTRODUCTION

1.      This suit involves the seizure of a houseless person's vehicle which she was living in at the time of the seizure, and the impound of that vehicle as a punishment for a parking infraction.  Following the impoundment, the vehicle was sold at public auction because the vehicle owner was unable to pay the accrued fines and fees which the towing company claimed were owed to it, and thus the plaintiff lost her home and all of her possessions that were contained within it.

## II.      PARTIES

2.      Penny Pannek is a resident of King County, Washington.

3.      The City of Seattle is a municipality and a political subdivision of the State of Washington.

COMPLAINT AND JURY DEMAND – 1

PAN019-0001 6734692.docx

4.      Lincoln Towing Enterprises, Inc. (hereafter "Lincoln"), a for-profit corporation, has its principal place of business in Washington State in Seattle, contracts with the City of Seattle to provide vehicle towing services, and is an agent of the City of Seattle.

### III.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter.

6.      This claim arose in King County, Washington.

7.      The Defendant City is located entirely within King County, Washington. Venue properly lies within the Western District of Washington wherein the defendant City of Seattle lies and wherein the defendant Lincoln does business.

### IV.      OPERATIVE FACTS

8.      In November of 2018, Penny Pannek was living in the City of Seattle.

9.      At that time, Pannek was unemployed, financially destitute, and the only "income" that she was receiving at that time was food stamps.

10.      At that time, she was living in her vehicle, a 1981 Chevrolet RV, Model Type "Born Free".  She also had two dogs living with her in the RV.

11.      At that time her RV bore license plate number 975WSH.

12.      At that time, she was using her RV as her residence.  She was houseless and therefore she was living in her RV.

13.      She kept all her worldly possessions in her RV.

14.       She acquired the RV as a gift in July of 2018 from the vehicle's previous owner Lin Beth.

15.      When Pannek acquired the RV from Lin Beth, she did not have the money to pay for registration tabs for it, and so she never registered it.

16.      In the first half of November, Pannek lived in her RV in the 8000 block of 8th Avenue South in Seattle close to the corner of 8th Avenue South and South Elmgrove Street.

COMPLAINT AND JURY DEMAND – 2

PAN019-0001 6734692.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

17.     Between November 1 and November 16 Pannek got to know some of the people who lived and/or worked in the neighborhood of that block of 8th Avenue South.

18.     Pannek kept the area around her RV clean.

19.     On November 16, 2018, Pannek was sleeping in her RV when she awoke to discover that a Lincoln tow truck had attached itself to her RV and had begun lifting the front end of the vehicle off the ground.

20.     At that time Pannek saw that a male Lincoln tow truck operator was attaching a chain to her RV.

21.     As her RV was being partially lifted off the ground, a door on her RV swung open and the rear view mirror affixed to that door broke.

22.     Pannek got out of the RV and spoke to the Lincoln operator and told him that he could not touch her RV.

23.     He responded by asking Pannek if she had $150.

24.     Pannek said she did not.

25.     The Lincoln tow truck operator replied, "Too bad."

26.     Pannek did not have any idea why the operator asked if she had $150.

27.     Pannek said to the tow truck operator, "There's no 72 hour sticker on my vehicle."

28.     The tow truck operator replied, "There's not."

29.     The operator then spoke to a woman who was seated in his tow truck. He said to her, "Hey babe give me that clipboard."

30.     The woman handed the tow truck operator a clipboard.

31.     The tow truck operator wrote out a slip and then he slapped it on the windshield of the RV.

32.     After slapping it on the windshield, the operator said to Pannek, "There is now."

33.     Pannek said to the operator, "You're stealing my home."

COMPLAINT AND JURY DEMAND – 3

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

34.     Pannek told the operator that he could not do this.

35.     The tow truck operator paid no attention to Pannek.

36.     Pannek scrambled back into the RV and grabbed her dogs, a leash, and a bag of clothes.

37.     While Pannek was retrieving those things, the tow truck operator lifted the front of her RV further off the ground.

38.     Pannek then jumped out of the RV.

39.     By the time Pannek jumped out of her RV, someone had called the police and police cars had arrived in the area.

40.     One of the police officers who had arrived was Officer Rodriguez.

41.     Officer Rodriguez tried to calm Pannek down.

42.     Pannek told Officer Rodriguez that she was a veteran.

43.     The tow truck operator then left the area, towing Pannek's RV away.

44.     Before towing the RV away, the tow truck operator stripped off the items that Pannek had tied onto the roof of her RV.  One of those items was a tent.

45.     The tow truck operator did not tell Pannek where has taking her RV.

46.     By impounding Pannek's vehicle, Lincoln, acting as the agent of the City of Seattle, unjustifiably and willfully interfered with Pannek's possession of her vehicle and deprived her of possession of it.

47.     The tow truck operator did not give Pannek any paper or any verbal instructions, that explained how Pannek could contest the tow.

48.     The operator did not give Pannek any paper or tell her anything about how she could request a hearing.

49.     After her RV was towed away, Pannek found the tent which had been on the roof of the RV, and which the tow truck operator had taken off the roof.

COMPLAINT AND JURY DEMAND – 4

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

PAN019-0001 6734692.docx

50.     Pannek set up that tent and lived in the tent for the rest of the month of November.

51.     A person who lived in a nearby house, noticed Pannek crying while she was putting up the tent.

52.     That neighbor gave Pannek some blankets.

53.     The next day, November 17, 2018, some other homeless people that she knew told Pannek that they had seen her RV at Dick's towing yard.

54.     Based on this information, within a day or two of getting this tip,  Pannek went to Dick's Towing yard in the late evening and spoke to the employee in charge that evening. The employee was a woman.  She asked that her RV be released to her.

55.     After receiving the RV from Lin Beth, Pannek never registered her ownership of the RV.  But Pannek did have the certificate of transfer of title which Lin Beth had signed.

56.     Pannek showed the woman the transfer of title paper that Lin Beth had signed which showed that he transferred the RV to her in July of 2018 and that she was the owner.

57.     That woman told Pannek it was "too late" to get her RV back.

58.     Pannek said she wanted to get some of her possessions out of the RV, but the woman told Pannek that she was not allowed to do that.  After briefly talking to her manager on the telephone, the woman told Pannek that she would have to come back and talk to the manager.

59.     Two days after that, Pannek went back to Dick's Towing yard to try again to retrieve some of her things from the RV.  This time she spoke to the manager.  The manager told her that she could retrieve some of the property from the RV.  But when Pannek went to do that, she discovered that her RV was no longer in the Dick's Towing yard.   She was then told that it had been moved to Lincoln Towing's north lot on Aurora and 122nd Street.

COMPLAINT AND JURY DEMAND – 5

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

PAN019-0001 6734692.docx

60.     In the latter part of November, Pannek was driven to the north lot by a friend of hers and attempted to retrieve her RV.  She was told the amount she would have to pay before they would release it to her, and she explained that she didn't have the money to do that.

61.     Pannek made a second trip to the Lincoln Towing north lot in early December.  She was again told she her RV would not be released to her unless she paid all the fees, she owed them for towing and storage and she again said she could not possibly pay those fees because she had no money.  She was told that the RV was going to be auctioned off on December 8, 2018.

62.     Pannek's RV was sold by Lincoln Towing at a public auction held on December 8th.

63.     By selling Pannek's RV on December 8, 2018, Lincoln, acting as an agent of the City of Seattle willfully and unjustifiably interfered with Pannek's vehicle and permanently deprived her of possession of her property.

64.     Many months after her RV was sold at auction, Pannek went one more time to Lincoln's north lot and asked for, and was given, a copy of a record of the auction sale.  That record (Copy attached as Exhibit A) states that the "Auction Sale Price" that Lincoln collected for the sale of her RV was $50.

65.     On December 8, 2018, Lincoln was aware that ownership of the RV had been transferred to Penny Pannek.  The paper record of the auction sale which Lincoln later gave to Pannek identifies Penny Pannek as the "new owner" of the vehicle and also lists the name of the old owner Lin Beth.

66.     The paper that Pannek was given *after* the sale of her vehicle at public auction, stated that there was a "deficiency amount" of $1,133.00 owing to Lincoln.

67.     That paper also stated that $109.38 was also allegedly owed as "sales tax."

68.     According to the paper that Pannek was given after the sale, because the sales tax was added to what she allegedly owed Lincoln, after the auction Pannek allegedly owed

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1   more than she had owed before the auction, and the "total amount due" to Lincoln was
2   $1,192.38.

3       69.     Lincoln claimed that on the day of the public auction when the RV was sold, this
4   amount was owed to Lincoln for accrued storage and impound costs.

5       70.     Pannek was never given any notice that her RV would be towed if she didn't
6   move it.

7       71.     Pannek never found any paper notice affixed to her RV.

8       72.     The only paper she ever saw was the paper that the Lincoln tow truck operator
9   slapped on the RV windshield before he drove off with the RV and she never had any chance
10  to read that paper, so she doesn't know what it said.

11      73.     In 2008, the Ninth Circuit Court of Appeals ruled that individualized notice be
12  given before an illegally parked car is towed unless the government has a 'strong justification'
13  for not doing so. *Clement v. City of Glendale*, 518 F.3d 1090, 1093-94 (9th Cir. 2008).

14      74.     Absent exceptional circumstances that establish such a strong justification, the
15  failure to give such notice is a due process violation. *Id.*

16      75.     *Glendale* explained that it would not violate due process to tow a vehicle if it
17  was parked in the path of traffic, blocking a driveway, obstructing a fire lane, or appeared
18  abandoned.

19      76.     When it was towed, Pannek's RV was not blocking traffic, not blocking any exit
20  or entrance to any place, was not obstructing anything, was not posing a health or safety hazard
21  of any kind and was not abandoned.

22      77.     The Lincoln tow truck operator knew that the RV was not abandoned because
23  Pannek was sleeping in it and woke up as he was preparing to tow it away.

24      78.     The Lincoln operator knew that Pannek was living in her RV because she told
25  him so.

26

COMPLAINT AND JURY DEMAND – 7

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

79.     Long after her vehicle was impounded and long after it was sold, Pannek made a Public Records Act (PRA) request for records concerning the impound of her vehicle.

80.     In response to that PRA request, Pannek received copies of records indicating that her vehicle was impounded because a Seattle parking enforcement officer believed that it had been parked for more than 72 hours in the same location.

81.     The Lincoln tow truck operator who impounded Pannek's RV never said anything to Pannek to suggest that he had considered any alternative means other than impoundment, of dealing with a perceived parking infraction, such as having Pannek drive the truck to another location.  *See State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980); *State v. Tyler,* 177 Wn.2d 690, 302 P.3d 165 (2013); *State v. Froehlich,* 197 Wn. App. 831, 391 P.3d 559 (2017).  He never asked Pannek if she would move the vehicle from its location on 8th Avenue South to any other location and never asked or suggested that the RV be moved.

82.     Pannek never received any notice that told her where her RV had been taken. She only knew to go to Dick's Tow yard because some other homeless people told her they had seen  it there.  She only knew that it had been moved from Dick's Tow yard to Lincoln's north lot when she discovered that it was gone from Dick's Tow yard, asked what had happened to it, and was told that it was probably moved to the north lot.

83.     Pannek never received any written notice that her RV was scheduled to be sold on December 8, 2018 (or on any other date) at a public auction.  She was verbally told that it was going to be sold at auction on that date, but she was told this only 2 or 3 days before the auction.

84.     Pannek never received any written notice advising her that she could "redeem" or recover her RV if she paid fees or fines.

85.     Under the applicable City of Seattle ordinance governing the impoundment of illegally parked vehicles, the impoundment of any such vehicle and the fines associated with any such impound are partially punitive, they are not solely remedial, and thus they are

subject to the restrictions of the Excessive Fines Clause of the Eighth Amendment. *City of Seattle v. Long*, 493 P.3d 94, 109-110 (2021).

86.    Pannek estimates that her RV was worth $1,200.

87.    Pannek not only lost her RV, with the exception of the bag of clothes she grabbed on November 16, 2018, Pannek lost everything she owned because everything she owned was in the RV.

88.    Lincoln injured Pannek in the conduct of trade or commerce.

## V.    CAUSES OF ACTION

### A. Deprivation of Federal Constitutional
### Right to Procedural Due Process
### (First cause of action)

89.    Defendants deprived Plaintiff of her right to procedural due process guaranteed by the Fourteenth Amendment Due Process Clause contrary to 42 U.S.C. §1983 by towing her RV without prior notice.

### B. Deprivation of Federal Constitutional
### Right to be free from unreasonable seizures
### (Second cause of action)

90.    Because there was no objectively reasonable basis to seize her home, Defendants deprived Plaintiff of her Fourth Amendment right to be free from unreasonable seizures by seizing her vehicular home.

### C. Deprivation of Federal Constitutional
### Right to be free from warrantless seizure
### (Third cause of action)

91.    Because Defendants did not obtain a warrant from a neutral magistrate authorizing the seizure of Plaintiff's vehicular home, and because there were no exigent circumstances which excused the failure to seek a search warrant, Defendants deprived Plaintiff of her Fourth Amendment right to be free from a warrantless seizure of her home.

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

### D. Deprivation of Federal Constitutional
### Right to be free from excessive fines and
### from cruel and unusual punishments
### (Fourth cause of action)

92.     Because Pannek was financially destitute, unemployed, and houseless, as applied to her, the impoundment of her vehicular shelter deprived her of her Eighth Amendment right to be free from Excessive Fines, and or imposed a cruel and unusual punishment upon her.

### E. Violation of Homestead Act
### (Fifth cause of action)

93.     Because her RV was her "principal residence," and was in fact her only residence, and because she was living in it at the time Defendants seized it, Defendants violated the Washington Homestead Act by subjecting her home to a forced sale in violation of Washington Constitution, article XIX, §1 and RCW 6.13.070.  *See City of Seattle v. Long*, 493 P.3d 94 (2021).

### F. Conversion
### (Sixth cause of action)

94.     Defendants committed the tort of conversion by unjustifiably and willfully interfering with Plaintiff's possession of her property on two occasions. *See, e.g., Potter v. Washington State Patrol,* 165 Wn.2d 67, 196 P.3d 691 (2008).  Defendants first committed conversion when her vehicle was impounded.  Defendants committed conversion again when Lincoln sold her vehicle at public auction.

### G. Deprivation of State Constitutional Right of Privacy
### (Seventh cause of action)

95.     Defendants deprived Plaintiff of her state constitutional right, guaranteed by Wash. Const., art. 1, section 7, to have reasonable alternatives to impoundment considered before her vehicle was towed away, such as the alternative of simply moving the vehicle to another city block.

COMPLAINT AND JURY DEMAND – 10

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

PAN019-0001 6734692.docx

### H. Consumer Protection Act
### (Eighth cause of action)

96.     Defendants violated Plaintiff's rights under the Washington Consumer Protection Act by committing an unfair act in the course of trade or commerce which affected the public interest, and which caused Plaintiff injury.

### VI.    JURY DEMAND

Plaintiff demands a jury of twelve.

### VII.    TORT CLAIM

Plaintiffs filed a tort claim with the City of Seattle on May 27, 2021.  The City of Seattle denied the claim on August 18, 2021.

### VIII.   RELIEF REQUESTED

Plaintiff hereby requests that the Court grant the following relief:

1.  Judgment against the defendant City of Seattle and Lincoln Towing Enterprises, Inc. for general damages and special damages in amounts to be proved at trial.

2.  Punitive damages in an amount to be determined by the jury at trial.

3.  That plaintiff be awarded her costs and attorneys' fees as provided for by 42 U.S.C. §1988 for violation of her constitutional rights.

4.  That plaintiff be awarded her attorneys' fees and costs as provided for by the Washington Consumer Protection Act, RCW 19.86.010 et seq., including RCW 19.86.090.

5.  That the Court grant such other relief as may be just and equitable.

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1    DATED this 22nd day of October, 2021.

2
                                    _s/  James E. Lobsenz_
3                                   Attorneys for Plaintiff
                                    CARNEY BADLEY SPELLMAN, P.S.
4                                   701 Fifth Avenue, Suite 3600
                                    Seattle, WA 98104
5                                   Phone: (206) 622-8020
                                    lobsenz@carneylaw.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT AND JURY DEMAND – 12

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

GZ J KDKV  A

Thursday, June 6, 2019

oln Towing (5405)
) Pasadena Pl. NE
tle, WA 98105

808581

06/16/2019

Beth, Lin(ros)
13845 Des Moines Memorial Dr
Burien, WA 98168-3739

ollowing described vehicle:

| Vehicle Information | | |
|---|---|---|
| Date  Friday, November 16, 2018 | Tow Ticket#  642698 | |
| Year  1981  **Make** Chevrolet | **Model**  P30 | **Color** White |
| dentification Number:  CGR3290110120 | **Tag Number:**  WA 975WSH | |

Pinnick, Penny P.
77 S Washington St
Seattle, WA 98104

New Owner

11/16/2018
12/08/2018
rage:  23

| | |
|---|---|
| Deficiency Amount: | 1,133.00 |
| Less Auction Sale Price: | $(50.00) |
| Less Security Deposit: | 0.00 |
| **Sub Total:** | **1,083.00** |
| 10.10% Sales Tax: | 109.38 |
| **Total Amount Due:** | **1,192.38** |

5 "  the registered disposer shall have a lien upon the vehicle or hulk for the services provided in the towing and storage of

this vehicle was sold at public auction for a bid of 50.00. After the auction, there is a towing and storage deficiency of  1,192.3

w truck operator will obtain a deficiency judgement against the registered owner in the amount of towing and storage charge
ublic auction.
OWNER WHO completed and FILED A TIMELY ("Timely" means WITHIN FIVE DAYS of the sale of the vehicle) and
RT OF SALE" is RELIEVED OF LIABILITY. The person named as the NEW OWNER on the timely and properly filed
IELD LIABLE FOR ANY DEFICIENCY AMOUNT.

available through Lincoln Towing (5405). Please contact Collections at 206-243-1647 to discuss a payment plan, or rem
your claim within ten [10] days. If we do not hear from you, your file will be turned over to a Collection Agency.

ice before the due date if you have any questions.